## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,      )
          )
        Plaintiff      )
       v.               )   Criminal Case No 1:09-cr-033-01
          )
SUZANNE WEEKS,          )
          )
       Defendant.      )

### DEFENDANT WEEKS'S
### SENTENCING MEMORANDUM

Suzanne Weeks, through counsel, respectfully submits this Sentencing Memorandum for

the Court's consideration in connection with her June 1, 2009 sentencing hearing. On

February 27, 2009, Ms. Weeks pled guilty to a one-count information for violation of 18 U.S.C.

§ 1001 ("Making a False Statement"). Ms. Weeks and her counsel have reviewed the Draft

Presentence Investigation Report ("PSR"),[1] found material errors with respect to the probation

office's guidelines calculation, and have filed objections under local rule 32.2.

The PSR incorrectly applies USSG §3B1.3 ("Abuse of Position of Trust or Use of

Special Skill") to reach an offense level not supported by evidence, not envisaged by the

guidelines, and not contemplated in the agreement reached between the Government and

Ms. Weeks. Ms. Weeks therefore requests that the Court reject the PSR calculation, apply the

correct Guidelines calculation as set forth in the plea agreement, and grant a departure under

§5H1.6 ("Family Ties and Responsibility") based upon the loss of caretaking support

---

[1] At the time of the filing of this Memorandum, Counsel had not received a response to its objections to the PSR.

Ms. Weeks's chronically ill mother will suffer if a departure is not granted. It is further requested that the Court sentence Ms. Weeks to a term of probation.

## A.   MATERIAL ERRORS IN THE PRESENTENCE REPORT

### 1.   PSR Guidelines Calculation Is Not Supported by Evidence

The PSR calculation is incorrect. The probation office concluded that Ms. Weeks's offense constituted an abuse of a position of public trust and therefore applied an upward adjustment of two levels.[2] The resulting adjusted offense level became "16"—which is 2 points higher than the adjusted offense level for the offense calculated under §2B1.1. *Compare* PSR ¶¶ 19–28 *and* Plea Agmt. at 2. After the acceptance of responsibility adjustment,[3] the PSR reached a total offense level of "13"— which is 1 point higher than the calculation under the plea agreement. This calculation moves Ms. Weeks from Zone C to Zone D in the Sentencing Table.

The PSR application of §3B1.3 is incorrect because there is no evidence in the record from which one could make a finding that the violation in question involved the abuse of "a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." USSG §3B1.3. *See, e.g., United States v. West*, 56 F.3d 216, 217 (D.C. Cir. 1995). As defined in the Commentary to §3B1.3, "public trust" is characterized by "professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference)." Ms. Weeks, however, had no discretion in her position as an agent for the Office of Personnel Management ("OPM").

---

[2] "If the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." USSG §3B1.3.

[3] The adjusted offense level in the PSR includes an acceptance of responsibility adjustment under § 3E1.1(b), which decreased the adjusted offense level by an additional 1 point but was not a part of the plea agreement negotiated with Government. While the adjustment is supported by the evidence, if the Government does not motion for such a decrease in the offense level, the PSR's calculation will result in a total offense level of "14."

The PSR offers *no* evidence to the contrary. And, in fact, the PSR's own description of

Ms. Weeks's job responsibilities demonstrate the absence of discretionary authority.

Ms. Weeks's job was to conduct assigned interviews of individuals in connection with a

background investigation. *See* PSR ¶ 10. Ms. Weeks was provided a list of questions that she

was required to ask. Essentially the same questions were asked at each interview and did not

vary to any significant degree. Ms. Weeks was also responsible for obtaining documents to

corroborate the information provided during the investigation. *See* PSR ¶ 10. There was no

exercise of judgment in this process, because the questions were dictated to her and the

documents required were dictated by the answers to the questions (e.g., required employment

records to verify employment information). Ms. Weeks was then responsible for submitting a

report that summarized the results of this process. Ms. Weeks did not participate in the hiring

process or have any input on how to interpret and use the information obtained in the interviews.

She essentially performed a ministerial function and served as a conduit of information.

The Victim Impact Statement signed by Thomas L. Forman, Assistant Director of the

United States Office of Personnel Management, which appears to be copied verbatim into the

PSR, confirms that Ms. Weeks had *no* authority to exercise *any* discretion in her role as an agent

for OPM. "The principal function of the investigator is to obtain **factual** information."

PSR ¶ 16. Mr. Forman further explained that

> Investigative standards were established for all government civilian, military, and
> contractor personnel requiring access to classified information and are used by
> government agencies and departments as the investigative basis for final clearance
> determinations. The investigative standards stipulate the coverage period for the
> initial investigations and reinvestigations, such as National Agency Check with
> Local Agency Checks and Credit Check (NACLC), Single Scope Background
> Investigations (SSBI), and SSBI-Periodic Reinvestigation. **The investigative**
> **standards also specify the type of sources to be interviewed, the information**
> **to be obtained from these sources, and the number of sources to be**

**contacted.  OPM's background investigations must comply with the investigative standards.**

PSR ¶ 16 (emphasis added).  Thus, investigators have no discretion in carrying out their responsibilities.

The plain language of the commentary to §3B1.3 clearly does not contemplate its application to this type of case.  The commentary explains that examples of positions of public or private trust are "the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination.  This adjustment does not apply in the case of embezzlement or theft by an ordinary bank teller or hotel clerk . . . ."  Ms. Weeks's position was more analogous to a bank teller or hotel clerk performing prescribed functions than to an attorney or a bank executive.  She was given specific tasks, the process by which they were to be carried out, and she was required to complete the tasks in the manner defined.  Just as is the case with a bank teller or hotel clerk, the scope of her employment responsibilities were defined and not discretionary.

In *United States v. Smaw*, 22 F.3d 330 (D.C. Cir. 1994), the Court made clear that the commentary's focus on positions characterized by professional or managerial discretion places a significant limit on the types of positions subject to the abuse-of-trust enhancement.  In that case, a clerk of the Federal Trade Commission (FTC) committed mail fraud and credit card fraud by applying for credit cards using the names and personal data of fellow employees, which she was able to access because of her position.  *Smaw*, 22 F.3d at 331.  The Court held that she was not subject to an enhancement for abuse of position of trust because "[i]f we include a time and attendance clerk within the scope of positions 'characterized by professional or managerial

4

discretion' the definition becomes so boundless as to be meaningless. The two-point enhancement is a significant aspect of sentencing." *Id.* at 332.

This interpretation was reaffirmed the following year in *United States v. West*, 56 F.3d 216 (D.C. Cir. 1995). The president and sole employee of a small courier company admitted to engaging in two fraudulent schemes—one involving the theft of checks he had been hired to transport, and another which involved certain fraudulent credit card transactions. 56 F.3d at 216. The Court found that his position as a courier involved almost no discretion, in that his job consisted of transporting certain items from one place to another. *Id.* at 217. "Such a position clearly does not involve the sort of discretion, either professional or managerial, contemplated by the plain language of the commentary to section 3B1.3." *Id.* Ms. Weeks's position similarly lacked the type of professional or managerial discretion that would subject one to the enhancement in question. *See* PSR ¶ 16.

## B.      THE APPROPRIATE GUIDELINES CALCULATION

As set forth in the plea agreement, the appropriate base offense level is "6" for a one-count criminal information charging Making a False Statement, in violation of 18 U.S.C. § 1001. The parties have agreed that an upward adjustment of 8-levels is warranted as the government sustained a loss greater than $70,000. As the Government has recognized, Ms. Weeks has taken responsibility for her actions and at least a 2-level reduction is appropriate. *See* Plea Agmt. at 2. The resulting adjusted offense level is "12." The Government agreed not to seek a sentence above the bottom of the Stipulated Guidelines Range, which would be 10 months of imprisonment. *See* Plea Agmt. at 4. However, the parties have also agreed that Ms. Weeks may seek a downward departure from the Stipulated Guidelines Range under USSG §5H1.6 for "Family Ties and Responsibilities." While the adjusted offense level of "12" falls into Zone C of

5

the Sentencing Table, and the guidelines do not authorize a sentence of probation for this zone, a departure under USSG §5H1.6 would place Ms. Weeks into either Zone A or Zone B, for which a sentence of probation is authorized. *See* §5B1.1(a).[4]

## C. MS. WEEKS'S PERSONAL HISTORY AND CHARACTERISTICS

Ms. Weeks is sixty-one years old. She was born in New York City to Fred and Norberta Runfola and is one of seven children. She lived in a number of different places growing up, including New York, Tennessee, Maryland, Florida and Michigan. Her parents were able to provide her with a stable and happy childhood. Ms. Weeks graduated from Palm Beach High School in West Palm Beach, Florida in June of 1965, at the age of 17. Ms. Weeks never attended college. After Ms. Weeks's high school graduation, she and her family moved to Pontiac, Michigan. Ms. Weeks remained in Michigan for only a short while before returning to Florida on her own. Her family subsequently moved to Alexandria, Virginia. Ms. Weeks joined her family in Virginia when her father fell ill.

In 1967, Ms. Weeks took a position with the federal government and has held various positions within the government until her retirement in 2006. At the age of twenty-four, she married a man by the name of William Weeks. Mr. Weeks was a member of a local D.C. band and during the course of their marriage refused to give up a lifestyle that included illegal drug use and alcohol abuse. In addition, Mr. Weeks was physically and emotional abusive. Mr. Weeks's behavior took a toll on Ms. Weeks and their marriage, and the two were separated three years later, and divorced after five years of marriage. They had no children, but Ms. Weeks                                              Ms. Weeks remained in the Washington D.C. area following her divorce.

---

[4] The §3553 factors set forth herein also justify a variance sentence that does not include a term of imprisonment.

In 1977, Ms. Weeks's parents moved back to West Palm Beach, Florida because her

mother, Mrs. Runfola,

.  In 1985, Mr. Runfola passed away.  Ms. Weeks moved back to

Florida after her father's death and has since remained there in order to care for her

now eighty-seven year old mother.  Mrs. Runfola is currently :

Mrs. Runfola

does not drive, has difficulty standing and walking, and is generally unable to care for herself

and provide for her own personal needs.  Ms. Weeks has assumed responsibility for daily care of

her mother, including cooking, cleaning, shopping and providing transportation.

## D.    STATEMENT OF THE OFFENSE

Unfortunately, Ms. Weeks has not been able to provide a complete and meaningful

account of the circumstances surrounding her misconduct.  Counsel's impression, after spending

countless hours in conversation with Ms. Weeks and after speaking with her supervisor at OPM,

is that a convergence of unfortunate circumstances contributed to her behavior.  These

circumstances include her                            , the stresses of work, two car accidents

occurring in a short period of time in 2005, and her concern and anxiety for her mother.

Ms. Weeks ε

*See* PSR ¶ 42–44.

Ms. Weeks                                                                              al

'), attached

hereto as Exhibit 1.  Around the same time, Ms. Weeks was in two car accidents

*See also* PSR ¶ 42. One of those accidents occurred at the same time as some of the misstatements at issue. While enduring her own medical issues and stresses, Ms. Weeks was continually concerned and anxious for her mother's health, which continues to deteriorate. As Ms. Weeks's

These circumstance of illness, stress and anxiety almost certainly contributed to Ms. Weeks's inability to do her job and to maintain proper records of her interviews and notes. In some instances, this resulted in confusion and an inability to reconstruct what interviews she did and did not perform. But, there is no question that, instead of properly conducting (or even re-conducting) interviews, Ms. Weeks did in fact submit inaccurate interview forms without an appropriate level of care and attention to their accuracy.

There also is one potentially mitigating circumstance that may be relevant to the Court. A system within OPM allowed for agents to switch off interviews with each other by going through an established process of submitting to a secretary the requested change in interview assignments. Agents "traded" interviews in this manner in order to simplify their travel schedules. But, agents sometimes "traded" interviews without formally recording the change in assignments. In those cases, an agent would simply take the information from her colleague and

incorporate it into a report in reliance on the colleague's statement regarding the conduct of the interview.

Ms. Weeks admits that, on more than one occasion, she did switch interview assignments with other agents without going through the appropriate channels to record the change in interview assignments. Unfortunately, given the circumstances described above, Ms. Weeks can no longer recall the occasions on which such informal agreements were reached. However, there is some probability that at least some of the errors and omissions underlying the offense conduct result from the conduct of other agents who failed to conduct the relevant interview, but who submitted information to Ms. Weeks under the auspices of having completed the interview.

Ms. Weeks is contrite and emotionally distraught over her conduct. And, she is extremely regretful about the disappointment and difficulty her actions may have caused her former employer, OPM, and the United States. Her mental and emotional health have suffered greatly as a result of her misconduct, and ·

At this point, Ms. Weeks

## E.   DOWNWARD DEPARTURE UNDER U.S.S.G. §5H1.6

In the instant case, Ms. Weeks's significant familial responsibilities warrant a downward departure. Ms. Weeks serves as the primary caretaker for her _ mother, and has been her mother's caretaker since 1985 when her father passed away. Her mother is now

87-years old and the loss of Ms. Weeks's care at this point will have a severe and detrimental impact on her mother's health, personal care and daily needs.

The Guidelines indicate that the Court shall consider a number of general non-exhaustive circumstances in determining whether a departure is warranted under §5H1.6. These circumstances are: (i) the seriousness of the offense; (ii) the involvement in the offense, if any, of the members of the defendant's family; and (iii) the danger, if any, to members of the defendant's family as a result of the offense. Ms. Weeks does not dispute that the nature of the offense is serious. As for the second and third considerations, the members of Ms. Weeks's family played no role in the offense, and Ms. Weeks did not put any of her family members in danger as a result of the offense.

The Guidelines also stipulate that a departure under this section requires the presence of four additional circumstances. Each of these circumstances is present in the instant case.

> **(i)     The defendant's service of a sentence within the applicable guidelines range will case a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family.**

Ms. Weeks's service of a sentence will cause a substantial, direct, and specific loss of essential caretaking to her 87-year-old widowed mother. Ms. Weeks has been the primary caretaker of her mother, Mrs. Runfola, for almost 25 years. She has undertaken this responsibility without regard to the impact on her own life and well being. Ms. Weeks's mother is                , does not drive, and depends on Ms. Weeks for daily care. Specifically, Mrs. Runfola ci

These

ailments make walking and standing difficult, require frequent doctors visits, occasional hospitalization, and make performing daily basic tasks difficult or impossible. Mrs. Runfola

10

relies completely on Ms. Weeks for assistance with performing tasks basic to daily life.

Mrs. Runfola would essentially be homebound if it was not for Ms. Weeks providing her with

daily transportation. Ms. Weeks also does Mrs. Runfola's grocery shopping, cooking and

cleaning. If Ms. Weeks is sentenced to a term of imprisonment, her mother will lose this

essential caregiving.

> **(ii)    The loss of caretaking or financial support substantially exceeds the
> harm ordinarily incident to incarceration for a similarly situated
> defendant. For example, the fact that the defendant's family might
> incur some degree of financial hardship or suffer to some extent from
> the absence of a parent through incarceration is not in itself sufficient
> as a basis for departure because such hardship or suffering is of a sort
> ordinarily incident to incarceration.**

While there is always some harm incident to incarceration, the loss of caretaking in this

case substantially exceeds the harm ordinarily incident to incarceration because of the existence

of *total* dependence that Mrs. Runfola has on Ms. Weeks. There are very few adult individuals

who have devoted 25 years of their life to caring for a family member. And, in recent years, the

reliance placed upon Ms. Weeks by her mother has become more and more imperative. As

Mrs. Runfola's health has deteriorated, she has become less able to stand and to walk—

essentially undermining her ability to care for herself in Ms. Weeks's absence.

> **(iii)    The loss of caretaking or financial support is one for which no
> effective remedial or ameliorative programs reasonably are available,
> making the defendant's caretaking or financial support irreplaceable
> to the defendant's family.**

Mr. and Mrs. Runfola, who were living in Virginia during the 1970s, moved back to

West Palm Beach, Florida in 1977 as a result of Mrs. Runfola .

. Her doctors

have indicated that she should not live in colder climates because of the health issues that it

presents. Thus, Mrs. Runfola can not be relocated to live with any of her children who live up

north. The one sibling who does reside in Jacksonville, Florida—Bridget Zagar—has an autistic daughter who requires constant care and attention. It is neither effective or reasonable to ask Ms. Weeks's sister, Mrs. Zagar, to undertake the additional responsibility of caring for her

' mother who also requires consistent care and attention.

### (iv)   The departure effectively will address the loss of caretaking or financial support.

A departure will effectively address the loss of caretaking support as it will allow Ms. Weeks to serve a term of probation instead of a term of incarceration. During her period of probation, Ms. Weeks will be able to remain in close proximity to her mother and be able to continue to provide for her daily needs.

## F.   SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

### 1.   The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

#### i.   Nature and Circumstances of the Offense

As discussed in Section D, a convergence of unfortunate circumstances contributed to the underlying offense. These circumstances include Ms. Weeks's              condition, the stresses of work, two car accidents occurring in a short period of time in 2005, and her concern and anxiety for her mother. There is no question that the Statement of Offense is serious, but it must be understood within the context of Ms. Week's ongoing personal medical afflictions, stress and fatigue, and perhaps self-inflicted work pressures during that period.

#### ii.   History and Characteristics of the Defendant

In addition to the personal history and characteristics discussed previously in Section C, character letters written on Ms. Weeks's behalf describe her as a loving, caring, dedicated, conscientious, hardworking, loyal and trustworthy individual. *See* Exhibit 3, attached hereto.

12

The letters confirm, as the PSR recognizes, that Ms. Weeks has served as the sole caretaker of

her mother since her father died in 1985, at the expense of her own personal life. PSR ¶ 40.

Ms. Weeks's life is marked by character and integrity, both before and after the charges

in this case were brought against her. Indeed, Ms. Week's supervisor at OPM during the time

period which gave rise to the indictment emphatically characterizes Ms. Weeks as one of the

hardest working employees he has ever had working for him. He also expresses his utmost

confidence in her honesty and integrity. *See* Letter from Rocky L. Atkinson, Character

Reference: Ms. Suzanne Weeks (April 10, 2009). Some of his letter is worth repeating here, as

it not only speaks directly to Ms. Weeks's character, but it supports counsel's assessment of the

circumstances of the offense:

> Suzie is one of the hardest working employees I have ever had working for me.
> Her honesty, integrity and dedication to the job have never been in question with
> me. It may be unfortunate but to me it seems that Suzie has little or no hobbies
> and her job as an Investigator was her life. She spent much more time than
> required with the job trying to make what she felt would be a difference. Suzie
> was always a leader when it came to who had more production. As her supervisor
> I would spend time riding and working with her. She always carried and worked
> on more cases at one time than anyone else. For the entire period of time that
> Suzie worked as an Investigator for the Department of Defense and continuing to
> the period working for the Office of Personnel Management, Suzie worked under
> and was fully aware of the verification of work system that was used by each
> Agency (known as the Courtesy Letter Program). With the amount of work that
> Suzie was producing, she had no reason to falsely claim that she had interviewed
> someone that she did not.
>
> With the limited knowledge I have of Suzie's current situation, I feel that Suzie
> may have mistakenly mixed an interview from one case to another due to the fact
> that she always strived to be the best and worked what may have been too many
> cases at one time.

Letter from Rocky L. Atkinson, Character Reference: Ms. Suzanne Weeks (April 10, 2009).

Ms. Weeks's history and characteristics argue strongly in favor of a sentence limited to a term of

probation.

2.     **The Need for the Sentence Imposed**

i.     **Just Punishment and Avoidance of Sentencing Disparities**

The circumstances surrounding Ms. Weeks's violation surely do not warrant imposition of a term of imprisonment. A term of probation is sufficient in this case to reflect the seriousness of the offense, promote respect for the law, and provide a just punishment. Ms. Weeks's record prior to this incident is completely unblemished. As the PSR shows, Ms. Weeks has absolutely no prior record that would indicate the circumstances giving rise to the instant charge were presaged by past events. Ms. Weeks is now retired—but even if this were not the case—her level of remorse and regret make clear that there is no chance of the circumstances here recurring.

Furthermore, no sentencing disparity will be created as between others who have been found guilty of similar conduct. Thirty-six percent of all defendants convicted under 18 U.S.C. § 1001 were sentenced to probation, with no period of incarceration.[5]

Ms. Weeks's history and characteristics argue heavily in favor of a sentence limited to a term of probation and a fine that the Court finds is appropriate in light of the cost suffered by the Government and Ms. Weeks's financial capability.

---

[5] According to a Bureau of Justice Statistics database, 6131 defendants were sentenced under 18 U.S.C. § 1001 from fiscal year 2000 through fiscal year 2007. *See* Bureau of Justice Statistics, Federal Justice Statistics Resource Center, available at http://fjsrc.urban.org/ (last visited May 4, 2009). Of those individuals, 2208 were given probation and were not sentenced to any period of incarceration.

## G.    CONCLUSION

For the reasons set forth above, Ms. Weeks requests that the Court impose a term of probation and a fine in this matter.

Dated:  May 21, 2009

Respectfully submitted,

Thomas C. Green (D.C. Bar #14998)
Mark D. Hopson (D.C. Bar #394338)
Judith C. Gallagher (D.C. Bar # 986752)
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
202-736-8000

15

## CERTIFICATE OF SERVICE

I certify that May 21, 2009, Defendant Weeks's Sentencing Memorandum was filed electronically with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel or record:

Ellen Chubin Epstein (Ellen.Chubin@usdoj.gov)
Thomas Edwin Zeno (thomas.zeno@usdoj.gov)

/s/ David S. Petron
David S. Petron

# EXHIBIT 1

## CLINICAL SUMMARY

**DATE:** 03/10/2009

**PATIENT NAME:** WEEKS, SUZANNE

Case 1:09-cr-00033-PLF   Document 21   Filed 06/05/09   Page 19 of 38

# EXHIBIT 2

March 23, 2009


Suzanne Weeks
1801 S. Flagler Drive, Apt. 211
West Palm Beach, FL 33401

# EXHIBIT 3

REPLY TO
ATTN OF:  Rocky L. Atkinson                                         10 Apr 09

SUBJECT:  Character Reference; Ms Suzanne Weeks

    TO WHOM IT MAY CONCERN


As a supervisor, coworker and friend of Suzanne Weeks, I would like to share my
knowledge, feelings and thoughts in this letter of Character Reference.

I first met Suzanne Weeks (known as Suzie Weeks) in January 2002, when I transferred
to the South Florida office of the US Department of Defense, Defense Security Service
(DSS) as the Supervisor.  Still in the supervisory position, In February 2005 the DSS was
transitioned to the Office of Personnel Management, Federal Investigative Services
Division (FISD).  During this entire period of time, until the time Suzie retired from her
position as a Special Agent/Investigator, she worked under my supervision.

Suzie is one of the hardest working employees I have ever had working for me.  Her
honesty, integrity and dedication to the job have never been in question with me.  It may
be unfortunate but to me it seems that Suzie has little or no hobbies and her job as an
Investigator was her life.  She spent much more time than required with the job trying to
make what she felt would be a difference.  Suzie was always a leader when it came to
who had more production.  As her supervisor I would spend time riding and working with
her.  She always carried and worked on more cases at one time than anyone else.

For the entire period of time that Suzie worked as an Investigator for the Department of
Defense and continuing to the period working for the Office of Personnel Management,
Suzie worked under and was fully aware of the verification of work system that was used
by each Agency (known as the Courtesy Letter Program).  With the amount of work that
Suzie was producing, she had no reason to falsely claim that she had interviewed
someone that she did not.

With the limited knowledge I have of Suzie's current situation, I feel that Suzie may have
mistakenly mixed an interview from one case to another due to the fact that she always
strived to be the best and worked what may have been too many cases at one time.

It is my belief that Suzie Weeks would never deliberately do anything that would harm
her reputation or harm the United States of America.

Were I in a position as a private employer, I would not hesitate to accept Suzie Weeks as an employee. She is one of the strongest willed persons I've ever met. There are many examples of her honesty and integrity, too many to relate in a letter, that leads me believe the way I do. If needed, I would be glad to provide further details.

Respectfully Submitted.


Rocky L. Atkinson
4615 NW 99th Lane
Coral Springs, FL  33076
(H) 954 227-2063
(Cell) 954 651-5488

**Harkin, Joanna**

| | |
|---|---|
| **From:** | Gallagher, Judith |
| **Sent:** | Monday, March 16, 2009 3:43 PM |
| **To:** | DC FAS Team |

March 14, 2009

To Whom It May Concern:

This is to advise that my sister Suzanne (Suzie) Weeks have always been a kind and giving person and always thinks of others before herself. Our entire family is very close to one another and Suzie is close with all of us (two brothers and four other sisters); in addition, to the many nieces, nephews and great nieces and nephews.

Our parents moved back to West Palm Beach, Florida back in 1977, as a result of our mother getting pneumonia and bronchial respiratory illnesses on a regular basis while living in Northern Virginia. Since our father passed away in 1985, Suzie has dedicated herself in being the primary care provider for our Mother. Our Mother is 87 years old now and her health is failing. Suzie does the cooking, cleaning for our Mom on a daily basis. Our Mother no longer drives and Suzie drives her everywhere she needs to go, especially to her Doctor's appointments (which are on a regular basis).

We come from a family that has very strong ties. We try to see each other as often as we can. We do speak to each other at least weekly but often on a daily basis checking on each other families and well being.

Suzie has given her life in being the full time care provider for our Mom since she lives directly there in West Palm Beach. Ever since                        she does not date or socialize with her friends. She truly has dedicated her life to caring for our Mom as well as taking care of her own health issues.

The family has been blessed in having Suzie as the primary care provider for our Mom since our father's death. We are very fortunate to have Suzie residing there in West Palm Beach, FL for many years now. Our Mother's doctors have indicated that Mom should not be relocated to the colder climates due to her health. The rest of the family lives in colder areas and we are fortunate to have Suzie there on a daily basis to care for our Mom.

Sincerely,

Peter F. Runfola

Robert V. Runfola
653 Bonaventure Ave. # 5
Atlanta, Ga. 30306
404-353-3350

3/9/09

To Whom It may Concern,

My name is Robert Runfola and I am the younger brother of Suzanne Weeks. Until
recently, I was employed with Comcast Business Services as the South Florida Region
Director of Sales and Marketing.I am proud to be able to attest to the character of my
sister Susie, as we call her, and what she means to me and the rest of our family.
First of all, Susie is one of the most reliable, hard working, conscientious, honest, and
peace loving individuals I have ever been associated. She dedicated most of her adult life
serving in various positions with the United States Government and was recognized for
Exceptional Performance frequently. She is caring and very giving and is is just naturally
a nurturing personality. Susie has lived a quiet life the last 20 years while i
                                        while serving as the main caretaker for our Mother,
who is now Eighty Seven(87) years old, and restricted in her activities. She has
sacrificed, what most people would consider to be the typical lifestyle of a woman, to
dedicate herself to the needs of our Mother. Susie is the type of individual, that would aid
and help a family member or friend if they were in need. I know of no other who gives
from the heart as Susie has, and still does to this day.
I am proud of her as to the Human Being she turned out to be, and her accomplishments
in her life. There is no one that I respect or love more than my sister Susie.

Sincerely,

Robert V. Runfola

**Harkin, Joanna**

| | |
|---|---|
| **From:** | Gallagher, Judith |
| **Sent:** | Monday, March 16, 2009 3:43 PM |
| **To:** | DC FAS Team |

From: BRIDGET ZAGAR [mailto:zagar24@msn.com]
Sent: Sunday, March 15, 2009 10:01 AM
To: Gallagher, Judith; Hopson, Mark D.
Subject: Character Reference - Suzanne Weeks

TO WHOM IT MAY CONCERN:

I am writing this letter to tell you about my sister, Suzanne Weeks. We are a very close and loving family. There are five sisters and two brothers in our family. I know this might sound a little too much for some people but we literally call each other every day. I like to think that we know each other very well. That is why this situation my sister faces has everyone in shock and disbelief. My sister has always prided herself in being a trusted and conscientious employee of the United States Government for 36 years. She has worked to the best of her ability even though at times she has faced many serious health issues. Her supervisors, fellow co-workers and even managers in the Headquarters office have voiced their opinions of what an exemplary employee she has been. Proof of her outstanding performance was also evident in the numerous awards she received up to the year she retired. I have always thought of her as a trustworthy, loyal person who is always willing to help other people and many times have placed others before herself whether at home or at her workplace.

There is an important issue that I would like to discuss with you involving Suzie and our mother. Since our dad died in 1985, Suzie has been the primary caretaker of our mother. Everyone else in the family lives in other states except for me, I live in northeast Florida. Our mother is 87 years old now. S                                                                    Suzie has lived in the same building as our mother for many years. She cooks and cleans for her as well as takes her to all her doctor appointments, trips to the stores, as well as going out and vacations. Since our dad died and Suzie she has not dated. She has dedicated her life to taking care of our mother. She is totally devoted to our Mom.

In closing, I must emphasize that these events have dramatically impacted my sister's life. It is my hope that the Court will take the facts that I have mentioned into consideration and have leniency on my sister.

Respectfully,

Bridget M. Zagar
1828 Kingswood Road
Jacksonville, FL 32207
(904) 647-6257

March 14, 2009

<u>Re: Suzanne Weeks</u>

To Whom It May Concern:

      This is written by me on behalf of my sister-in-law, Suzanne Weeks. I have known her for 23 years, almost since my wife, Dianne C. Minikes (ne Runfola) and I first started dating.

      I have pretty much lived through this terrible ordeal with Suzie since the beginning, especially so because she has stayed with us when she has had to come to Washington, D.C., because of this matter. I am also a former U.S. Ambassador (2001-2005) and life-long lawyer. While I would judge myself to be a good character reference because judging character has been part of my profession, Suzie never asked me to write on her behalf. Nonetheless, I feel I must.

      The reason is that she is one of the most loving people I have ever met, as is her entire family. This past year, I have gone through a reoccurrence of a throat cancer. Throughout this time, Suzie has been an incredible sympathetic and understanding source of support. She writes me cards almost every week, unremittingly, and supports me by phone or in person when she is here. I have observed her taking care of my mother-in-law, her mother, day-by-day, year after year, the same way she has been so sweet to me—providing loving and thoughtful care to her. In the case of Norberta (my mother-in-law), her servitude has been at great cost to her financially, emotionally and otherwise. Yet, she has done it and also finds time to continue to reach out to her other family members like her many brothers and sisters, nephews, nieces and me.

      I observed Suzie in her professional work. She was, in my view, extraordinarily conscientious and careful. I do know, however, that she had her
                                  is so that my wife often said "Suzie is often sick." The past many years have been extremely trying and difficult for her.

      I was with Suzie and my wife when she plead guilty several weeks ago here in D.C. federal court. It was a heartbreaking moment for her---and for me. Now that she is facing possible imprisonment, I felt I needed to write on her behalf and plead for her, that she does not have to serve. I also plead for my mother-in-law whom I know very well, that Suzie does not have to serve. To think of Norberta having to get by on her own is unfathomable. We will survive but I don't know how she and we would manage.

      Many letters may, I assume, be written on Suzie's behalf. You, the reader, receive thousands more. After a while they may all begin to sound the same. All I am saying is that this one is written from the heart because of whom I have seen Suzie be---one of the most loving people I have known and someone who I believe has no venality

Page 2

whatsoever in her otherwise strong moral fiber.  It is too bad that her situation has come to this but since it has, I fervently hope that the Court and your recommendation will encompass mercy for her in her sentencing.

Thank you for your time in reading this.

Sincerely,

Ambassador Stephan M. Minikes (Ret.)
202-957-7727
419 Walker Rd.
Great Falls, VA 22066

March 11, 2009

To Whom It May Concern,

I write to you today in reference to my sister, Suzanne Weeks. Suzanne has had a myriad

. Despite her own maladies she has continued to take care
of our mother, Norberta Runfola, who will be 86 years of age in July. Since our father
died in 1985, Suzanne has been our mother's primary caregiver. Our mother has a

(                                                                                       She requires the use of a cane
just to be able to get around and is unable to drive at this juncture of her life. She is
totally dependent upon Suzanne for her well being.

We are a very closely knit family, and Suzanne has always been deeply concerned about
immediate family members as well as her nieces, nephews, grandnieces, and
grandnephews. Our children have always felt quite attached to Suzanne. She has never
hesitated to lend her assistance in any family crisis.

Suzanne has always been very stable in terms of work history. She spent 36 years as a
civil service employee earning many awards during that time. Also, she has maintained
residence in the same building in West Palm Beach, Florida for the past 20 years.

I have never known Suzanne to be involved in drugs, excessive use of alcohol, or any
activities of this nature. She has completely sacrificed any social life for the past 17
years in deference to our mother's care. Besides Suzanne, I have 3 other sisters and 2
brothers. We were all brought up in a wholesome, Catholic based environment. We have
all been working, contributing members of society thanks in great part to our strong
Catholic upbringing.

Suzanne has always been a loyal, dependable member of our family. I have never known
her to participate in any activity that would reflect negatively on her own character or be
a detriment to the Runfola Family.

If I can be of further assistance, please do not hesitate to contact me.

Sincerely,

Norberta Stephenson
7 Constitution Road
Laurel Springs, N. J.  08021
Home Phone    856 784-9609
Work Phone     609 206-3943
Email        stepsalesco@aol.com

11   March 2009

To whom it may concern:

I have known Suzie Weeks over the course of the past nine years. She has been a wonderful, supportive and trustworthy neighbor. She is a woman of integrity and good character.  My husband and I have become friends with Suzie and her mother and we are grateful to have them as such wonderful neighbors.

Suzie takes wonderful care of her elderly mother. She is attentive, dutiful, respectful and loving. Suzie would be an asset to any community she would be a part of.

Sincerely,

Babette Sughrue
1801 South Flagler Drive
West Palm Beach, FL. 33401

Joanne Rendon
Rapallo South - 209
1801 S. Flagler Drive
West Palm Beach, FL 33401

6 March, 2009

To whom It May Concern:

I have known and been a neighbor of Suzy Weeks for the past eighteen years. During this period I have observed Suzy and her serious commitment to her work both with the Federal government and with a local organization. She is not a "slacker" but addresses any duty that comes her way with vigor and enthusiasm.

The aging mother of Mrs. Weeks also lives in our condo complex. Her care and dedication to her mother is also exemplary. I can also testify that while I was down with a bout of pneumonia a couple of years ago, Suzy never failed in checking in on me and offering her services — as well as many delicious meals!

I can, without reservation, highly recommend Ms. Suzy Weeks for any position that she may be seeking.

Sincerely,
Joanne Rendon
561 833 - 4679

March, 2009

To Whom It May Concern:

I have known Suzie Weeks, residing at 1801 So. Flagler Dr., Apt. 211, West Palm Beach, FL 33401 as my neighbor and I have also had social contact with her, since approximately 1988 to present. As my neighbor, I see Suzie, and her mother, who also lives in the building at least weekly.

In the timeframe Suzie has been my neighbor, we've been through several hurricanes, and she is one of those type individuals, who made sure her neighbor's needs were met during crisis.

I know Suzie worked for the Government for many years, and after retiring, she worked as a Secretary. As long as I have known her, I would see her coming and going with a briefcase, and working long hours.

In addition, Suzie has always taken care of her mother, who I am aware of has a h of pneumonia. Suzie is the only family member who lives in town. Suzie's mother over the last two years has difficulty walking and is now using a cane.

Suzie as an individual who is an honest and a caring person. She is always cheerful, and has initiative and motivation.

Suzie is a good neighbor, and well liked by all.

Sincerely,

Yvette Shaffer
1801 So. Flagler Dr.,
Apt. 205
West Palm Beach, FL 33401
(561) 659-4739

**Harkin, Joanna**

| | |
|---|---|
| **From:** | Gallagher, Judith |
| **Sent:** | Monday, March 16, 2009 3:45 PM |
| **To:** | DC FAS Team |

From: airmcgill@bellsouth.net [mailto:airmcgill@bellsouth.net]
Sent: Tuesday, March 10, 2009 1:33 PM
To: Hopson, Mark D.; Gallagher, Judith
Subject: Suzanne Weeks

To Whom It May Concern:

I am writing on behalf of my sister-in-law, Suzanne Weeks, whom I have known for over forty years.

Over those years, I have observed Suzie struggle as a young woman to overcome a failed marriage, build a career to support herself, and sacrifice to provide care for her mother.

Although a person of modest means, she has supported herself and generously contributed to the welfare of her extended family. Since her father's death, more than twenty years ago, she has devoted herself to the ever-increasing personal needs of her mother.

Despite her own significant health issues, she has continuously earned a livelihood and cared for her mother who is now 87 and who relies on her for daily care and personal transportation.

I have no personal knowledge of the criminal case in which she is involved, but it is completely out of character with the person I know. Because of the inconsistency of this situation with everything else in her life, and on behalf her family who care about her, and her mother who relies upon her; I urge the Court extend her careful consideration and appropriate leniency.

Respectfully submitted,

John G. McGill

195 14th Street N.E.

Suite TS3
Atlanta, GA 3009

Tel. 904-556-6391

**Harkin, Joanna**

| | |
|---|---|
| **From:** | Gallagher, Judith |
| **Sent:** | Monday, March 16, 2009 3:45 PM |
| **To:** | DC FAS Team |

From: jackiemcgill@bellsouth.net [mailto:jackiemcgill@bellsouth.net]
Sent: Tuesday, March 10, 2009 1:39 PM
To: Hopson, Mark D.; Gallagher, Judith
Subject: Suzanne Weeks

To Whom It May Concern:

Suzanne Weeks is my sister. My parents raised seven children who have always been friends as well as family. This situation Suzie is in has devastated all of us, and knowing her we find it unbelievable.

Suzie is the second of five daughters and two sons. She has always been a very hard working, loyal person. I have visited her a number of times when I was amazed at how diligent she was working day and night. I was also proud of the number of awards and commendations she received from her bosses and higher authority. She was always very dedicated to her job, and it was her priority.

Suzie is a very strong person even though she has had a very tough life since my father died in 1985. She is the sole caretaker of my 87 year old mother since she is the only one who lives in the same area. She has not had any social life to speak of as her work took up most of her time and taking care of Mom's needs. She takes Mom to all of her doctor appointments, grocery shops for her and cooks her meals. The majority of time she will cook the night before so Mom will have breakfast, lunch, and dinner the next day
        nd Suzie has to drive her to all of her appointments.

                                                                        he has always been there for my mother and all of my sisters and
brothers. She has never been in any trouble with the law and has led a very quiet, non-existent social life. To add to all her burdens she is currently out of work.

I can't emphasize enough what a good and caring person Suzie is. Please consider all of these positive qualities she has when deciding her fate.

If you have any further questions, please contact me at 904-556-6390 or 404-892-0064.

Sincerely,
Jacqueline F. McGill
195 14th Street, N.E., TS-3
Atlanta, Georgia 30309

**Harkin, Joanna**

**From:**      Gallagher, Judith
**Sent:**       Monday, March 16, 2009 3:47 PM
**To:**          DC FAS Team

From: BRIDGET ZAGAR [mailto:zagar24@msn.com]
Sent: Sunday, March 15, 2009 9:09 PM
To: Gallagher, Judith; Hopson, Mark D.
Subject: Character Reference - Suzanne Weeks

To whom it may concern,

I have been Suzanne Weeks brother-in-law for 27 years. My wife Bridget is her sister. I have found Suzanne to be dedicated to her family, a hard worker and always ready to help those in need, within and outside her family. She has helped my family countless times during times of need from emergencies to child care. I find Suzanne to be a compassionate and giving person.

I am aware of the jobs Suzanne has held with different agencies within and outside the government. She has always achieved high ratings and outstanding awards. I have always known her to take her work seriously and go the extra mile to get the job done.

a. She has a strong will
and is not a quitter.

Suzanne's dedication to her 87 year old mother is admirable. Suzanne is and has been for years the primary care giver for her mother. Any absence from her mother's side will be devastating to both.

Sincerely,

H. H. Zagar II
1828 Kingswood Road
Jacksonville, FL 32207
(904) 647-6257

419 Walker Road
Great Falls, Virginia 22066
202-957-7726 Cell

TO WHOM IT MAY CONCERN:

I am writing in reference to my sister, Suzanne Weeks. I want to share with you who she is and a little about her life.

There are seven siblings in our family and we are all very close. When my father died in 1985, we became the parents to my mother but Suzie had the most responsibility because she lived in the same city as our Mom. Her social life basically stopped due to caring for Mom. During the past 10 years there were even more responsibilities for her and for the past 5 years now, she does everything for our Mother. Very unfortunately, none of the siblings live near our Mom so this has fallen on Suzie.

Mom's health has deteriorated at the age of 87. S

Mom has many doctor appointments and Suzie takes her to all of them. Even when Suzie was working, she would take time off but would always return to work. Suzie, cooks, cleans and grocery shops and makes all Mom's doctor appointments and has been doing all of this even when she was working. My mother has come to depend on Suzie for her entire being.

Suzie has worked terribly hard her entire life and has taken pride in her work. She has also been sick for a long time. My heart would break for Suzie when I knew she would bring work home and work late even though she was so sick.

Through all of this, Suzie has taken care of our mother.

Suzie is an amazing person who is all about giving and caring-----that is what her life is all about. We have 15 nieces and nephews and 6 great nieces and nephews and even though she doesn't have much money, she never misses a birthday and is so loving to all of them.

When I think about the mistake that Suzie has made and when I see how horrible she feels about it, my heart aches for her because she is so far from being a bad person and she has given so much of herself to family and friends in so many ways.

Suzie has gone through torture these past two years with this matter in her life.  It is as if she has been sentenced and punished all in one and through it all, the one person she has constantly worried about is our mother.

I hope and pray the court will not send Suzie to prison as I know Suzie will live with this mistake for the rest of her life and that alone is severe punishment. Going to prison would be a horrible ordeal for our Mom because of her desperate need for Suzie.

Thank you for listening.

Sincerely,

Dianne C. Minikes